IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

VICTORIA MCGEE HARRIS,

Petitioner,

vs.                                           No.  13-0963-DRH

UNITED STATES OF AMERICA,

Respondent.

MEMORANDUM and ORDER

HERNDON, District Judge:

### I. Introduction, Background and Procedural History

This matter is before the Court on Harris' motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 (Doc. 2). The government opposes the motion (Doc. 9) and Harris filed a reply (Doc. 7). Based on the following, the Court denies Harris' petition. Further, having closely examined the record, the Court concludes that an evidentiary hearing is not necessary in this matter. It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively demonstrate that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *Cooper v. United States,* 378 F.3d 638, 641–42 (7th Cir. 2004) (district court did not abuse its discretion in denying petitioner an evidentiary hearing where petitioner did not provide additional facts or assertions that would warrant a hearing).

On March 24, 2011, Harris pled guilty to an information containing two counts: Count 1 mail fraud in violation of 18 U.S.C. § 1341 and Count 2 engaging in a monetary transaction over $10,000 in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957. *United States v. Harris*, 11-30022-DRH; Docs. 4, 5, 6, & 7. On February 17, 2012, the Court sentenced Harris to 210 months in prison on Count 1 and 120 months on Count 2 to run concurrently and judgment reflecting the same was entered on February 21, 2012. *Id.* at Docs. 46 & 50. During the proceedings, Harris was represented by attorneys Adam Fein and N. Scott Rosenblum. Thereafter, Harris, through counsel, filed a notice of appeal. *Id*. at Doc. 53. On July 11, 2013, the Seventh Circuit Court of Appeals issued the Mandate affirming Harris' sentence and conviction and denying the motion for rehearing in this case. *Id*. at Doc. 147.

Subsequently, Harris, through attorney Bradford Kessler, filed this § 2255 petition on September 18, 2013 (Doc. 2). Harris raises the following arguments regarding ineffective assistance of counsel during her criminal case:

(1) counsel failed to inform her that an admission to an information was no different than pleading guilty to an indictment had she been indicted by a grand jury;

(2) counsel failed to inform her that by admitting to the information she was in fact pleading guilty to the criminal charges of mail fraud and money laundering, rather than merely admitting to the co-mingling of funds in an amount over $10,000;

(3) counsel failed to advise her that by pleading guilty to the charges, she would likely be sentenced to a term under the federal sentencing guidelines of between 135 and 168 months in prison; and

(4) counsel failed to challenge the voluntariness of the plea on direct appeal.

## II. Legal Standard

The Court must grant a § 2255 motion when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. More precisely, "[r]elief under § 2255 is available only for errors of constitutional or jurisdictional magnitude, or where the error represents a fundamental defect which inherently results in a complete miscarriage of justice." *Kelly v. United States,* 29 F.3d 1107, 1112 (7th Cir. 1994) (quotations omitted). As a result, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996); *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).

Of course, a § 2255 motion does not substitute for a direct appeal. A defendant cannot raise constitutional issues that he could have but did not directly appeal unless he shows good cause for and actual prejudice from his failure to raise them on appeal or unless failure to consider the claim would result in a fundamental miscarriage of justice. *Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Fountain v. United States,* 211 F.3d 429, 433 (7th Cir. 2000); *Prewitt,* 83 F.3d at 816. Meanwhile, a § 2255 motion

cannot pursue non-constitutional issues that were not raised on direct appeal regardless of cause and prejudice. *Lanier v. United States,* 220 F.3d 833, 842 (7th Cir. 2000). The only way such issues could be heard in the § 2255 context is if the alleged error of law represents "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio,* 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).

The failure to hear a claim for ineffective assistance of counsel in a § 2255 motion is generally considered to work a fundamental miscarriage of justice because often such claims can be heard in no other forum. They are rarely appropriate for direct review since they often turn on events not contained in the record of a criminal proceeding. *Massaro v. United States,* 538 U.S. 500, 504-05, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Fountain,* 211 F.3d at 433-34. Further, the district court before which the original criminal trial occurred, not an appellate court, is in the best position to initially make the determination about the effectiveness of counsel in a particular trial and potential prejudice that stemmed from that performance. *Massaro,* 538 U.S. at 504-05. For these reasons, ineffective assistance of counsel claims, regardless of their substance, may be raised for the first time in a § 2255 petition.

### III. <u>Analysis</u>

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This right to assistance of

counsel encompasses the right to *effective* assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). A party claiming ineffective assistance of counsel bears the burden of showing (1) that his trial counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 688-94, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000). Either *Strickland* prong may be analyzed first; if that prong is not met, it will prove fatal to plaintiff's claim. *Strickland,* 466 U.S. at 697; *Ebbole v. United States,* 8 F.3d 530, 533 (7th Cir. 1993).

Regarding the first prong of the *Strickland* test, counsel's performance must be evaluated keeping in mind that an attorney's trial strategies are a matter of professional judgment and often turn on facts not contained in the trial record. *Strickland,* 466 U.S. at 689. The petitioner's burden is heavy because the *Strickland* test is "highly deferential to counsel, presuming reasonable judgment and declining to second guess strategic choices." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotations omitted). In other words, the Court must not become a "Monday morning quarterback." *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir. 1990). With regards to the second prong of *Strickland,* the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Fountain*, 211 F.3d at 434; *Adams v. Bertrand*, 453 F.3d 428, 435 (7th Cir.

2006). "A reasonable probability is defined as one that is sufficient to undermine confidence in an outcome." *Adams,* 453 F.3d at 435 (citing *Strickland,* 466 U.S. at 694).

In the instant case, the Court cannot say that neither Mr. Fein nor Mr. Rosenblum's performance significantly prejudiced Harris or that their representation fell below an objective standard of reasonableness. Further, the Court cannot say that despite these alleged errors the results of the proceedings would have been different.

As noted supra, Harris argues: (1) counsel failed to inform her that an admission to an information was no different than pleading guilty to an indictment had she been indicted by a grand jury; (2) counsel failed to inform her that by admitting to the Information she was in fact pleading guilty to the criminal charges of mail fraud and money laundering, rather than merely admitting to the co-mingling of funds in an amount over $10,000; (3) counsel failed to advise her that by pleading guilty to the charges, she would likely be sentenced to a term under the federal sentencing guidelines of between 135 and 168 months in prison; and (4) counsel failed to challenge the voluntariness of the plea on direct appeal. The Court rejects all of these arguments and addresses them together as they are interrelated.

Harris' plea documents, statements during the plea hearing and her signed waiver contradict these arguments. It is clear to the Court that Harris was informed of the nature of the proceedings and was aware of what she was

pleading guilty to in the waiver of indictment. Moreover, Harris' signed waiver of indictment plainly contains charges of Mail Fraud in violation of 18 U.S.C. § 1341 and Engaging in Monetary Transaction Over $10,000 in Property Derived From Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. *Harris*, 11-30022-DRH; Doc. 1. Further, her signed written agreement to plead guilty states:

> she is actually guilty and will enter a plea of guilty to an Information, charging: **Count 1: Mail Fraud**, in violation of Title 18 United States Code, Section 1341, which carries a maximum statutory penalty of 20 years imprisonment, 3 years supervised release, mandatory restitution, a fine up to $250,000, with a mandatory special assessment of $100; and **Count 2: Engaging in a Financial Transaction over $10,000 from property derived from Mail Fraud**, in violation of Title 18, United States Code, Section 1957, which carries a maximum statutory penalty of up to 10 years imprisonment, 3 years supervised release and a fine of up to $250,000, with a mandatory special assessment of $100.

*Id.* at Doc. 7, p. 4. That plea agreement also informed Harris that an anticipated sentencing guideline range was 135-168 months. *Id.* at Doc. 7, p. 6. In addition, the plea agreement informed her of the following:

> The Defendant understands that the Sentencing Guidelines are advisory only and that the Court has the discretion to sentence the Defendant anywhere up to the statutory maximum sentence after consideration of the Sentencing Guidelines, and the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense(s) and the criminal history and characteristics of the Defendant.

*Id.* Further, during the hearing, Magistrate Judge Wilkerson thoroughly addressed all these issues with Harris as the following colloquy took place:

> THE COURT: All right. Now, Ms. McGee, have you seen a copy of the information that we're talking about this morning?
> MS. HARRIS: YES.
> THE COURT: Have you gone over it?

MS. HARRIS: Yes.
THE COURT: Okay. I'm not asking you if you did it at this point. What I am asking you is, do you understand what the government says you did?
MS. Harris: Yes.
THE COURT: Ms. McGee, you have the right to be indicted under the Constitution of the United States. No one can be charged except upon indictment by a grand jury. Do you understand that right?
MS. HARRIS: Yes.
THE COURT: However, you can waive or give up that right to indictment, and we may proceed by way of information. And that's what I'm told by your attorney that we want – that you want to do this morning. Is that correct?
MS. HARRIS: Yes.
…
THE COURT: And it says that you have been advised of the nature of the charges, proposed information, your rights and you waive in open court, and there is a date. I'd like for you to date it and sign it, a prosecution by indictment and consent that the proceedings may be by information rather than indictment. Is that what you want to do, proceed by way of information?
MR. HARRIS: Yes.
…
THE COURT: All right. And Ms. Harris, nobody has forced you to sign this, right?
MS. HARRIS: No.
THE COURT: You signed it of your own free will?
MS. HARRIS: I did.
…
THE COURT: You want to waive your right to indictment and proceed by information?
MS. HARRIS: I do.
THE COURT: All right. The Court is signing the waiver of indictment and will find that – make a finding that Ms. Harris' waiver of her right to be indicted is a knowing and voluntary waiver, and the Court will accept the same, and we will proceed by way of information in this case.
…
THE COURT: Oh, I'm sorry. The information, how does she intend to plead?
MR. FEIN: Not guilty to the information.
THE COURT: Okay. Is that correct?
MS. HARRIS: Yes, sir.

MR. SMITH: Well, it's – actually – it's – it's co-mingling an arraignment and a plea of guilty.
THE COURT: Okay.
MR. SMITH: But you can clear that up.
MR. FEIN: But to the information, your Honor, there is a plea of not guilty for the arraignment, but for the –
THE COURT: Oh, right, right, right. Okay.
MR. FEIN: See?
THE COURT: I misunderstood what – I didn't – I didn't understand what you were saying. All right. You wish to enter an initial plea of not guilty, and then we will go back. But I want to know how she ultimately intends to plead today.
MR. FEIN: Guilty, Your Honor.
THE COURT: Okay. That's what I wanted to know. Is that correct, Ms. Harris, you intend to – as we go through these proceedings to ultimately enter a plea of not guilty – of guilty – a plea of guilty?
MS. HARRIS: Okay. Yes.
THE COURT: All right. Now, for the record, all right – and thank you, Mr. Fein. But for the record, I will enter an initial plea of not guilty, and we will change it to a plea of guilty, all right. Do the parties agree with that posture, Mr. Smith?
MR. SMITH: The United States concurs, your Honor.
MR. FEIN: Yes, your Honor.
THE COURT: All right. Very good. Before I accept your guilty plea, Ms. Harris. There are a number of questions I'm going to order you in order to assure myself that you are entering a valid plea. If you do not understand any of the questions or at any time you wish to consult with Mr. Fein, all you have to do is say so because it is essential to a valid plea that you understand each question before you answer. You understand that?
MS. HARRIS: Yes.
THE COURT: You have a right to consult with Mr. Fein.
MS. HARRIS: Right.
THE COURT: Tell me in your own words what we are doing here today.
MS. HARRIS: We're doing a stipulation of fact for a plea and –
MR. FEIN: What is your plea going to be?
MS. HARRIS: Not guilty and then guilty.
THE COURT: Okay. So you are here to plead guilty to the information, correct?
MR. FEIN: Your Honor, the problem is when you say that, she is pleading guilty to a stipulation of facts in the plea agreement. She doesn't agree with every fact in the information, so that is what is confusing her. There is a stipulation of facts to which she is pleading

guilty to and the plea agreement. It doesn't mean that she agrees with every fact in the information.
MR. SMITH: Allow the government to comment, your Honor?
THE COURT: Please.
MR. SMITH: Over the course of the plea negotiations, changes have been made to a stipulation of facts that do not affect the factual basis of the essential elements of the offenses. Therefore, the information sets forth two counts, Count 1 being mail fraud and Count 2 being money laundering in violation of 1957. That's a cash transaction of over $10,000 in property derived from specified unlawful activity.
There is a factual basis completely that covers all of this essential elements in the stipulation of facts. There are some allegations in the information that they still wish to contest or leave open for the possibility of contesting. For example, the government believes the amount of the loss is approximately $6 million' whether it's a little below or a little above, it is going to be about 6 million.
They want to reserve the right to look further and potentially argue that it is not 6 million. That's not fatal to the plea, it's not fatal to the essential elements that substantiate the crimes. But they are just leaving open for argument certain facts that are detailed in the information.
I hope I made that simple.
…
THE COURT: All right. I'm going to go back and ask again. Do you understand that you are pleading guilty to the charges contained in this information?
MS. HARRIS: Yes.
THE COURT: Okay. Very good. Does either of you have any doubt as to Ms. Harris' competence to plead in this matter at this time?
MR. SMITH: From the facts of the investigation, your Honor, and from personally meeting and speaking with Victoria McGee Harris, I do believe she is competent.
MR. FEIN: I do not, your Honor.
…
The COURT: Ms. Harris, have you had ample opportunity to discuss your case with Mr. Fein?
MS. HARRIS: Yes.
THE COURT: Are you satisfied with Mr. Fein's representation of you?
MS. HARRIS: Yes.
THE COURT: Has there been anything you wanted Mr. Fein to do for you that he has not done?
MS. HARRIS: No.
…

THE COURT: Okay. And, again, you have received a copy of the information?
MS. HARRIS: Yes.
THE COURT: And you've gone over those charges in that information with Mr. Fein?
MS. HARRIS: Yes.
…
MR. SMITH: Yes, your Honor. First off, the information, as I've indicated, charges Count 1 mail fraud and Count 2 engaging in a financial transaction over $10,000 in property derived from specified unlawful activity, that being mail fraud.
The statutory penalties – and for clarification, not advisory sentencing guidelines because we have had a lot of talk about those in plea negotiations.
THE COURT: No, just the maximum, that's what I want.
MR. SMITH: Right. Just for clarification for the defendant, your Honor, the mail fraud carries a statutory penalty of up to 20 years imprisonment, 3 years supervised release. Under the Alternative Minimum Fines Act, it is up to $250,000 or twice the gross gain, which could be implicated in this – in this case; 100-dollar special assessment; and mandatory restitution.
The money laundering count in Count 2 carries a statutory penalty of up to 10 years in prison, 3 years supervised release, a fine of up to $250,000, or kicking in the Alternative Minimum Fines Act, twice the gross gain; 100-dollar special assessment; and, again, mandatory restitution.
The essential elements of mail fraud are: First, that Victoria McGee Harris knowingly devised a scheme to defraud; second, she did so knowingly and with the intent to defraud; third, for the purpose of carrying out the scheme or attempting to carry out the scheme, she used or caused the use of the United States mail. That would be the essential elements for Count 1.
The essential elements for the money laundering count, your Honor, in Count 2 are: First, that Victoria McGee Harris engaged or attempted to engage in a monetary transaction; second, that she knew at the time the transaction involved criminally derived property; third, that the property had a value greater than $10,000; fourth, the property was, in fact, derived from the SUA or specified unlawful activity of mail fraud; and fifth, that the transaction occurred in the United States.
Those would be the essential elements, your Honor.
THE COURT: Thank you, Mr. Smith.

Ms. Harris, did you hear the essential elements that the government would be required to prove beyond a reasonable doubt if you took this matter to trial.
MS. HARRIS: I did.
THE COURT: Do you – did you hear the maximum possible punishment you face if the Court accepts your guilty plea?
MS. HARRIS: I did.
THE COURT: Ms. Harris, has anyone threatened you or in any way tried to force you to plead guilty in this matter?
MS. HARRIS: No.
THE COURT: All right. What I went through with, Ms. Harris, with the lawyers is, you have no agreement with the government. You are just pleading guilty to the charges in contained in the information. Is that your understanding of what's going on here?
MS. HARRIS: Yes.
THE COURT: Okay. There is a document there, though, that I placed in front of you which is your agreement to plead guilty.
MS. HARRIS: Mmm hmm.
THE COURT: I'm going to draw your attention to the last page. Is that your signature?
MS. HARRIS: It is.
THE COURT: Anybody force you to sign that?
MS. HARRIS: No.
THE COURT: And that is your intention, to plead guilty, correct?
MS. HARRIS: Yes.
…
THE COURT: Have you and Mr. Fein talked about how the sentencing commission guidelines might apply to your case?
MS. HARRIS: Yes.
THE COURT: While the Court must be advised by these guidelines, Ms. Harris, in determining the particular sentence to impose, the Court will consider certain statutory factors under Section 3553 of Title 18, including, among other things, the nature and circumstances of the offense and the nature and characteristics of the defendant.
The Court will impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, and to adequately deter future criminal conduct.
Have you and Mr. Fein talked about how these statutory factors outside the guideline might apply to your sentence.?
MS. HARRIS: We did.
THE COURT: Do you understand that a presentence report will be completed to assist the Court in sentencing you, and you and the

government will have an opportunity to challenge the facts reported by the probation office? Do you understand that?
MS. HARRIS: Yes.
…
THE COURT: Do you understand if the sentence is more severe than you expected, you will still be bound by your plea and have no right to withdraw it?
MS. HARRIS: Yes.
THE COURT: … I have been handed a document here, Ms. Harris, a stipulation of facts. I'm going ot pass that over to Mr. Fein. I'm going to draw your attention to Page 2. Is that your signature?
MS. HARRIS: It is on Page 3.
THE COURT: Page 3, I'm sorry, the last page. That's your signature?
MS. HARRIS: Mmm hmm.
THE COURT: "Mmm hmm" won't work. You've got to say it.
MS. HARRIS: Yes.
THE COURT: Did anybody force you to sign it?
MS. HARRIS: No.
THE COURT: Have you gone over this document from beginning to end?
MS. HARRIS: Yes.
THE COURT: Read every word?
MS. HARRIS: Yes.
The COURT: Is there anything in this document you disagree with?
MS. HARRIS: No.
THE COURT: Did you do the things that the government said that you did in this document?
MS. HARRIS: Yes.
…
THE COURT: Ms. Harris, are you pleading guilty because you are guilty?
MS. HARRIS: Yes.
THE COURT: You are not pleading guilty for some other reason?
MS. HARRIS: No.
The COURT: All right. At this time, I am going to ask you, how do you plead to the two counts charged in the information – just one second – Count 1, which charges you with mail fraud, and Count 2, which charges you with engaging in a monetary transaction over $10,000 in property derived from specified unlawful activity? How do you plead?
MS. HARRIS: Guilty.
THE COURT: Ms. Harris, since you acknowledge that you are, in fact, guilty as charged in Counts 1 and 2 of the information, since you know your right to a trial, what the maximum possible punishment

>is, and since you are voluntarily pleading guilty, I will accept your guilty plea.

*Harris*, Doc. 76; Initial Appearance and Plea to an Information hearing transcript.

Based on the foregoing, the Court finds that Harris' petition fails. Her claims that her attorneys were ineffective are without merit. The Court finds that Harris has not met the burden regarding the involuntariness of her plea. "A reasonably competent lawyer will attempt to learn all of the relevant facts of the case, make an estimate of a likely sentence, and communicate the results of that analysis to the client before allowing the client to plead guilty." *Bethel v. United States,* 458 F.3d 711, 717 (7th Cir.2006). The Supreme Court has acknowledged that the decision to plead guilty involves many uncertainties: "[b]ecause many questions about the facts and how a court or jury will apply the law to those facts cannot be answered by counsel with certitude, '[w]aiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.' " *Id.* ( *quoting McMann v. Richardson,* 397 U.S. 759, 769–70, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). Furthermore, while "a gross mischaracterization of the sentencing consequences of a plea may strongly indicate deficient performance, it is not proof of deficiency." *Bethel,* 458 F.3d at 717. The critical question for the Court to consider is "whether counsel undertook a good-faith effort to determine the applicable facts and estimate the sentence. An inaccurate prediction of a sentence alone is not enough to meet the standard." *Id.*

Also, Harris does not offer support for her allegation that her attorneys did not advise her properly. *See McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (petitioner must present objective evidence that he would not have entered the guilty plea; his own self-serving testimony is not enough). Therefore, her claims of ineffective assistance of counsel on these grounds do not succeed. *See United States v. Jordan*, 870 F.2d 1310, 1318 (7th Cir.), *cert. denied*, 493 U.S. 831 (1989)(holding that even assuming petitioner's counsel should have advised petitioner of possible consequences of his plea, petitioner has the burden to offer evidence to support the bare allegations that his counsel failed to advise him of these possibilities). Also, Harris' arguments are belied by her statements at the change of plea hearing which are presumed truthful. *See United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998).

Magistrate Judge Wilkerson informed Harris that the Court would not be able to determine the guideline impact for the sentence in her case until after the Presentence Report was prepared and the Court reviewed the objections of the parties and that the sentence results from that may be different from the one provided by counsel and the plea agreement. Having all that spelled out quite carefully, having admitted to actually committing the charged crimes, and having been expressly admonished as to the consequences of her plea, Harris elected to go forward. Manifesting neither confusion nor hesitation, Harris pled guilty. As stated before, Harris was aware of the consequences and decided to plead guilty.

Moreover, the Court finds it telling that Harris never sought to withdraw her ill-advised guilty plea, despite the fact she had close to *eleven months* between pleading guilty and being sentenced, during which time she was released on bond. Lastly, the Court notes that Harris is an educated woman with a Master's Degree in Liberal Arts.

The Court finds that Harris' claims that her attorneys were ineffective are without merit. Her bald assertions (which are either not true or not supported by the record) that her counsel were ineffective are insufficient basis to grant her the relief she seeks. "An ineffective assistance of counsel claim cannot stand on a blank record, peppered with the defendant's own unsupported allegations of misconduct." *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001); *Fuller v. United States*, 398 F.3d 644, 652 (7th Cir. 2005)(finding that a claim of ineffective assistance unsupported by "actual proof of [his] allegations" cannot meet the threshold requirement for purposes of § 2255). In fact, the Court finds that her attorneys' actions were reasonable and sound in light of the circumstances.

Harris' sentence and conviction are legal. She has not shown that her sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack," 28 U.S.C. § 2255. Thus, the Court rejects Harris' 28 U.S.C. § 2255 petition/motion. Finally, the Court notes that letting Harris'

conviction and sentence stand would not result in a fundamental miscarriage of justice. *Murray v. Carrier*, 477 U.S. 478, 495 (1986).

Under the 2009 Amendments to Rule 11(a) of THE RULES GOVERNING SECTION 2255 PROCEEDINGS, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Thus, the Court must determine whether petitioner's claims warrant a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A *habeas* petitioner does not have an absolute right to appeal a district court's denial of his *habeas* petition; he may appeal only those issues for which a certificate of appealability have been granted. *See Sandoval v. United States,* 574 F.3d 847, 852 (7th Cir. 2009). A *habeas* petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003); 28 U.S.C. § 2253(c)(2). Under this standard, petitioner must demonstrate that, "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).

Where a district denies a *habeas* petition on procedural grounds, the court should issue a certificate of appealability only if (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court

was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

As to petitioner's claims, the Court finds that reasonable jurists would not debate that the petition does not present a valid claim of the denial of a constitutional right, or that this Court is barred from reviewing the merits of petitioner's claim. Reasonable jurists could not debate that the petition should have been resolved in a different manner, as petitioner's claims of ineffective assistance of counsel do not present evidence of constitutionally deficient attorney performance; nor do they demonstrate resulting prejudice. Therefore, the Court declines to certify any issues for review pursuant to 28 U.S.C. § 2253(c).

## IV. Conclusion

Accordingly, the Court **DENIES** Harris' motion under 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence by person in federal custody and the supplements to the petition. The Court **DISMISSES with prejudice** this cause of action. The Court **ORDERS** the Clerk of the Court to enter judgment reflecting the same. Further, the Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

Signed this 9th day of October, 2014.

Digitally signed by David R. Herndon
Date: 2014.10.09 16:39:20 -05'00'

United States District Court